Filed 5/12/25  P. v. Wise CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LARRY WISE,<br><br>        Defendant and Appellant. | A172566<br><br>(San Bernardino County<br>Super. Ct. No. FSB22000465) |

Defendant and appellant Larry Wise (appellant) appeals following his conviction for making a criminal threat (Pen. Code, § 422)[1] and other charges. Appellant contends the criminal threat conviction is not supported by substantial evidence.  We reject the claim, but we direct that the abstract of judgment be corrected in two respects.

PROCEDURAL BACKGROUND

Appellant was charged by information with attempted forcible spousal rape (§§ 261, subd. (a)(2), 664; count one), making a criminal threat (§ 422; count two), assault with a firearm (§ 245, subd. (a)(2); count three), inflicting

---

[1] All undesignated statutory references are to the Penal Code.

This matter was transferred by California Supreme Court order on February 25, 2025, from the Fourth Appellate District (No. E083527) to the First Appellate District.

corporal injury on a spouse (§ 273.5, subd. (a); count four), and possession of a firearm by a felon (§ 29800, subd. (a)(1); count five).

In November 2023, a jury convicted appellant of the criminal threat charge in count two, a lesser included simple assault charge in count three (§ 240), and a lesser included battery against a spouse charge in count four (§ 243, subd. (e)(1)). The jury acquitted appellant of counts one and five.

In February 2024, the trial court imposed a two-year sentence on the criminal threat charge. The court awarded custody credits totaling 41 days, but the corresponding minute order and abstract of judgment state zero days of credits were awarded. The court also reduced a $600 restitution fine to $300, but the corresponding minute order and abstract of judgment state the $600 fine was imposed.

The present appeal followed.

## FACTUAL BACKGROUND

During the evening on February 15, 2022, two San Bernardino Police Department officers were dispatched to a house to investigate a report of domestic violence. At the house, the officers contacted the victim, S.W. An officer testified S.W. appeared nervous and reluctant to cooperate.[2] The officer said, "I'm here to help you, ma'am. Okay? . . . What happened? Explain to me. Be honest, huh?"

S.W. told the officer that she and appellant were married and had twin boys together; she also had an 18-year-old son from a previous relationship. On February 13, 2022, the day of the Super Bowl, appellant was drinking in the garage with friends. Later, at 4:00 a.m., appellant, who was drunk, woke S.W. and tried to have sex with her. S.W. was tired and told appellant,

---

[2] The officer's interactions with S.W. were captured on his body camera; video from the camera was shown to the jury.

"[D]on't." Appellant got angry, called her names, and pulled out a gun and pointed it at her.

Appellant told S.W., "[G]et the fuck out my room[,] bitch." S.W. went to the living room and appellant followed, continuing to "cuss[] at [her]." Appellant then hit S.W. in the head with the gun. S.W.'s children—who woke because of the noise—objected, and appellant told them to "shut the fuck up and mind their business." S.W. told appellant that if he hit her again, she would call the police. Appellant responded that, if she did, "we gonna have a fucking shoot out." When asked if appellant threatened to kill her, S.W. stated, "He threatened to kill all of us." She said she feared for her life. Appellant tried to leave with S.W.'s bag and he dragged her on the ground when she tried to retrieve it.

At various points during her interaction with the police, S.W. expressed fear of appellant. For example, she stated, "I don't want him to know I said something," and "We're all scared. . . . [H]e's a gang member."

When called as a witness at trial, S.W. testified she invented the entire story because she was upset that appellant had been involved in an extramarital affair. She also testified the police were "swaying" her and "telling [her] what to say."

The second officer interviewed S.W.'s 18-year-old son, R.S., in the house's garage.[3] R.S. appeared "in serious fear," and R.S. told the officer that he was afraid of appellant. R.S. said he saw appellant strike S.W. on the head with a firearm. The officer asked if appellant ever threatened to kill them, and R.S. said appellant "was like, 'If you call them, I swear it'll get ugly

---

[3] The interview was captured on the officer's body camera; video from the camera was shown to the jury.

for y'all.' " The officer testified R.S. appeared "to be in fear and from my perception, it appeared that he believed" the threat.

When called to testify at trial, R.S. stated that he could not remember any fight or altercation on the night in question.[4] He remembered the police coming to the house and speaking to an officer, but he did not remember what he said. He testified that he did not know if what he said was a lie and that he told the officer "[s]omewhat of the truth." He was afraid to talk to the police and was forced to talk to them. He told the officer "anything that came in my head" to get appellant away from the family because of how upset his mother was over appellant's infidelity.

## DISCUSSION

I.    *The Criminal Threat Conviction is Supported by Substantial Evidence*

Appellant contends insufficient evidence supports the criminal threat conviction. We reject the claim.

"We 'review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Hin* (2025) 17 Cal.5th 401, 455.) We " ' "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People v. Young* (2005) 34 Cal.4th 1149, 1175 (*Young*).) To show a criminal threat under section 422, the prosecution must prove " '(1) that the defendant "willfully threaten[ed] to commit a crime which

_____

[4] Before testifying, when asked if he swore to tell the truth in his testimony, R.S. responded, "No." The court asked, "So you are not going to be able to tell the truth?" and R.S. shook his head. Following an off-the-record discussion, R.S. swore to tell the truth. Later he testified he had been "confused" about the admonition.

4

will result in death or great bodily injury to another person," (2) that the defendant made the threat "with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat . . . was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.' " (*In re George T.* (2004) 33 Cal.4th 620, 630 (*George T.*).)

Appellant first argues the evidence failed to demonstrate a threat was made at all because at trial S.W. and R.S. recanted the statements they made to the police. The body camera video includes S.W.'s statements that appellant "threatened to kill all of us" and that he threatened a "shootout" if S.W. called the police; the video also includes R.S.'s statement that appellant said " 'I swear it'll get ugly for y'all' " if the police were called. It was within the province of the jury to determine whether S.W. and R.S. were telling the truth to the officers and whether their recantations at trial were credible. (*Young, supra,* 34 Cal.4th at p. 1181 ["Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact"].)

That proposition is alone sufficient to dispose of appellant's first argument, but we also observe that the reliability of the statements to the police was enhanced because S.W. and R.S. generally corroborated each other, even though they were interviewed separately. Their demeanor on the body camera video also supported a finding that they were telling the officers

the truth. On the other hand, the jury easily could have found not believable the excuses proffered at trial for purportedly lying to the police. And R.S.'s equivocation at trial as to whether he would tell the truth further undermined the credibility of his trial testimony. Appellant asserts the statements S.W. and R.S. provided the police were "incoherent" and "inconsistent." But, again, it was the province of the jury to determine the credibility of the statements. The statements were not so inherently unreliable that they could not constitute substantial evidence. (Cf. *People v. Reyes* (1974) 12 Cal.3d 486, 499 [no substantial evidence where three witnesses contradicted each other and the codefendant made a "voluntary and convincing trial confession"].)

Second, appellant argues insufficient evidence supports a finding that any threat was " ' "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat." ' " (*George T.*, *supra*, 33 Cal.4th at p. 630.) In making that determination, "[t]he surrounding circumstances must be examined to determine if the threat is real and genuine, a true threat." (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1137 (*Ricky T.*).)

Appellant argues the present case is analogous to *Ricky T.*, in which a high school student threatened a teacher. (*Ricky T.*, *supra*, 87 Cal.App.4th at p. 1137.) The Court of Appeal found insufficient evidence to support a criminal threat conviction in light of the surrounding circumstances, reasoning, "[The defendant's] intemperate, rude, and insolent remarks hardly suggest any gravity of purpose; there was no evidence offered that [the defendant's] angry words were accompanied by any show of physical violence—nothing indicating any pushing or shoving or other close-up

6

physical confrontation. . . . There is no evidence that [the defendant] exhibited a physical show of force, displayed his fists, damaged any property, or attempted to batter [the teacher] or anyone else." (*Id.* at p. 1138.) In contrast, the circumstances in the present case supported the conviction. The jury found appellant actually assaulted S.W., and the police interviews showed that S.W. and R.S. actually feared appellant. The jury could reasonably infer from appellant's use of violence and the continued fear demonstrated by S.W. and R.S. that his threat met section 422's immediacy requirement. (See *People v. Orloff* (2016) 2 Cal.App.5th 947, 954 [the defendant's "statement, 'You're dead,' was a death threat that induced sustained fear. Unlike *Ricky T.*, [the defendant's] threat was not merely 'an angry adolescent's utterances.' "]; *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349 [noting that the court in *Ricky T.* "found the teacher's fear to be fleeting"].)[5]

We reject appellant's claim that insufficient evidence supported the criminal threat conviction.

II.     *We Direct Correction of the Minute Order and Abstract of Judgment*

The parties agree the abstract of judgment and the minute order prepared after sentencing are inaccurate in two respects. First, the documents specify a $600 restitution fine under section 1202.4, subdivision (b), but the trial court imposed a $300 fine. Second, the documents state that appellant earned zero days of custody credit, but the trial court awarded 41

---

[5] Appellant points out that the jury acquitted him of the two charges involving a firearm and appears to argue those acquittals are inconsistent with its finding him guilty on the criminal threat charge. First, the jury could find the circumstances supported the criminal threat charge even if appellant did not have a gun. Second, even if the verdicts are inconsistent, that does not mean there is insufficient evidence of the criminal threat. (See *People v. Johnson* (2006) 142 Cal.App.4th 776, 788.)

days of custody credit. We will direct that the abstract of judgment and minute order be corrected to accurately reflect the trial court's oral pronouncement of sentence. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

DISPOSITION

We direct the trial court to correct the abstract of judgment and the February 23, 2024 minute order to reflect imposition of a $300 restitution fine and an award of 41 days of custody credit. The trial court shall forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, we affirm the judgment.

SIMONS, J.

We concur.

JACKSON, P. J.
CHOU, J.

(A172566)

8